PATRICIA McINTYRE

*v.*

JOHN DOE and MARY DOE.

(*Nashville,* December Term, 1959.)

Opinion filed February 5, 1960.

132

C. ALLEN HIGH, Nashville, for plaintiff in error.

CARROL D. KILGORE, Nashville, for defendant in error.

Mr. Special Justice S. A. Marable delivered the opinion of the Court.

This is a suit filed by Patricia McIntyre, the mother of a young child, seeking to revoke a written surrender of the child made before Chancellor Ned Lentz of the Davidson County Chancery Court.

The record is extremely brief and meager, consisting only of the original petition, a colloquy or discussion of the matter involved between the attorney for the petitioner and the Chancellor, and the order of the Court from which the petitioner appealed; however, we think that the principal question for determination appears not withstanding the state of the record.

As the petition is in keeping with the brevity of the record and contains some of the matters essential for consideration, we quote same as follows:

"Patricia McIntyre, Petitioner,

vs.

John Doe & Mary Doe,
(Real names unknown but believed to be
Mr. and Mrs. Joe Erwin.)

"Petition to Revoke Surrender.

"Your petitioner, Patricia McIntyre, would respectfully show and state to the Court as follows:

"That on the 20th day of August, 1958, a female child was born to the petitioner at the Mid State Baptist Hospital.

"On the 27th day of August, 1958, your petitioner made a voluntary surrender before the Honorable Ned Lentz, Chancellor, in chambers to the defendants named in this petition, and said defendant was represented in the proceeding by the Honorable Morris Levine, Attorney at Law, Nashville, Tennessee.

"Your petitioner now realizes that she made a grevious error in surrendering her child and it is her earnest desire to raise the child in a fit and proper home and therefore files this petition in accordance with Section 36-117, Tennessee Code Annotated, seeking to revoke the surrender heretofore made.

"Premises considered, petitioner prays:

"1. That the defendants be notified through their attorney, Morris Levine, to appear and answer this petition, but not under oath, their oath being expressly waived.

"2. That an early date be set for a hearing of this petition and at said hearing the Court revoke the surrender heretofore made by the petitioner.

"3. Petitioner prays for general relief."

The petition was sworn to by the petitioner and was filed on February 27, 1959. The real defendants named in the caption of the petition, Mr. and Mrs. Joe Erwin, were never served with any process, but same was served on Morris Levine, Attorney, by a deputy sheriff of Davidson County. No answer or other pleading was filed to the petition.

The matter came before the Honorable Ned Lentz, Chancellor, on May 15, 1959, at which time the only proceedings had consisted of the aforesaid colloquy or discussion between the attorney for the petitioner and the Chancellor, all of which being preserved in a bill of exceptions filed.

It seems from the discussion of said matter between the attorney for the petitioner and the Chancellor, that the former desired to have the Chancellor hear proof from the petitioner as to what occurred in her attempt to get the surrender revoked, while the Chancellor was of the opinion that the petitioner had never complied with the statute governing the revocation of such surrenders and that any proof at that time under the allegations of the petition could have no bearing upon the subject as the law had not been complied with.

We gather from the record, as best we can, these facts:

That on August 27, 1958, the petitioner voluntarily appeared before Chancellor Lentz and made a surrender of her infant child, then about seven days old, to Mr. and Mrs. Joe Erwin. This surrender was made in writing before the Chancellor in his chambers, voluntarily by the petitioner, and in the manner prescribed by the statute. Section 36-114, T.C.A. The child was apparently at, or about, that time delivered into the custody of Mr. and Mrs. Erwin, and they have had such custody since said time.

About two, three or four months after said child was surrendered, the petitioner went to the office of the Chancellor for the purpose of revoking, or seeking a revocation, of said surrender. The Chancellor told her to return to his office the next morning at eleven o'clock and bring

a copy of the original surrender, and that he would then make said revocation. The petitioner never returned to the office of the Chancellor at said time, nor has she since at any time appeared before him for the purpose of revoking said surrender. So far as the record reveals, she took no further action about seeking a revocation of said surrender until February 27, 1959, when she consulted her attorney of record about the matter and filed the petition in this proceeding.

Prior to the filing of said petition, and on the same day, her attorney went to the office of the Chancellor and had a discussion with him about revoking said surrender, but the petitioner was not present at the time, and nothing was accomplished. The petitioner's attorney stated subsequently that, at the time, "they (evidently the petitioner and her mother) were there in my office waiting for me to come back and tell them what should be done, and I was sort of put in this position actually. I didn't bring them on the last day when I could have," because of his understanding of what the Chancellor said about a hearing.

The following portions of the discussion between the attorney for the petitioner and the Chancellor, on May 15, 1959, are quoted:

"Mr. High: Maybe I am a little bit confused on it. I have already discussed this matter with your Honor, and we discussed it back on the same day that I filed this petition to revoke the surrender in this case. At that date, which was the last day of the six months after the surrender was made in this Court, I appeared in your Honor's chambers and we did discuss the matter, and at that time I understood your Honor to say

that there was a question in your mind as to whether or not there was any discretionary power to revoke the surrender or not, whether it was mandatory or discretionary, and at any rate you did not intend to revoke the surrender without a hearing, and that was why we had set this matter * * *

"The Court: No. I will be perfectly frank with you. I took the original surrender in this cause, and it must have been two, maybe three or maybe four months after I took the surrender, this young lady and her mother came to my office to revoke, which was within the time limitation set by the statute. I told them to return to my office the next morning and bring me a copy of the original surrender so that I could revoke it. They never came back to my office.

"The statute says that—that is, the statute prior to the '59 amendment, that the revocation shall be before the Judge of Chancery who took the surrender.

"Now, I have studied this thing as much as I could. I don't feel the statute was complied with. She did not come back within the period. She had every opportunity. She didn't do it, so that's all I say about it."

The surrender and the petition filed herein seeking a revocation thereof occurred while the Adoption Statute, Acts of 1951, Chapter 202, was in force, and that statute is the governing authority in this proceeding. The present statutory amendment, Acts of 1959, Chapter 223, did not become effective until March 20, 1959. The pertinent section of the prior statute is, as follows:

"*Revocation of consent.*—No consent described in this chapter shall be revocable by the consenting party

after the entering of an interlocutory decree or a final order of adoption when entering of an interlocutory decree has been waived in accordance with the provisions in this chapter; *provided, no consent shall be revocable after six (6) months from the date of giving of the consent;* provided further, that if consent is to place the child for adoption to the department or to a duly licensed child-placing agency, as provided in this chapter, it shall not be revocable after thirty (30) days from the date of the giving of the consent. *Request for revocation of surrender must be in chambers before the judge in which original surrender was given.*" Section 36-117, T.C.A.; Acts of 1951, Chapter 202, Section 11. (Emphasis supplied.)

A further provision of said statute, Subsection (7), Section 36-102, T.C.A., Acts of 1951, Chapter 202, Sections 2, 40, reads as follows:

"Consent, surrender or written consent as used in this chapter means a surrender before the judge of a chancery or circuit court."

It is apparent from a reading of the above and other provisions of the statutes that it was intended, in order for a parent to effect a valid surrender of a child, for such parent to appear before a Judge of the Chancery or Circuit Court, in his chambers, and there make such surrender. Likewise, it follows that, in order to effect a valid revocation of any such surrender it was necessary for such parent to appear before the same Judge taking the surrender and made the necessary request for such revocation, and that such request made be made in the Judge's chambers within six months from the date such surrender was made.

■ Said statute contains no other provision whereby the valid surrender of a child for adoption may be revoked than as set out in the section hereinabove quoted. There is no authority for any such surrender to be revoked by or through an attorney, or other person. It was the evident intention of the Legislature in requiring such surrenders and requests for revocations to be made before a Judge of the Chancery or Circuit Courts, in the privacy of his chambers, to have proper judicial supervision of such important acts on the part of a parent or guardian of a child. Nor do we find any authority in the statute for revocations of surrenders to be made by the filing of a petition in the Court over which the judge taking the surrender presides.

The petition in this cause was filed on the last day of the six months period of limitation, within which time the petitioner could have gone before the Chancellor in his chambers and made a proper request for revocation of the surrender that she had previously made. There is no showing that the Chancellor knew anything about such petition until long after the six months period had elapsed. It was simply a proceeding brought in this court, in the same manner as other suits, and in nowise could be construed as a proper request made by the petitioner before the Chancellor in his chambers.

■ This is not a suit in which fraud or undue influence is charged by the petitioner in connection with the surrender of her child, which she states in her petition was voluntarily made, but is based solely upon the petitioner's change of mind. As stated by the Chancellor, she had ample opportunity to go before him in his chambers within the six months from the date of said surrender and request a revocation thereof, but this she did not do.

We are bound by the provisions of the statute in this case, which seem to be reasonably clear and plain. If because of negligence or laches on her part she failed to comply with the express provisions of the statute, she alone must bear the responsibility therefor.

Decisions of courts of other jurisdictions are of little assistance in determining the question here presented, as they are based on many and varied statutes of those states. Adoption proceedings, in which the surrender of a child for adoption is a preliminary step, were unknown at common law, and depend upon statutes which must be substantially followed.

We think that the holding of the Chancellor that the petitioner did not comply with the statutes of this State in her attempt to revoke the surrender of her child made on August 27, 1958, and his action in dismissing the petition in this cause, were proper and correct, and the decree of the Chancery Court is accordingly affirmed.